IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

       Plaintiff,

   v.

P. MULLEN, et al.,

       Defendants.

_____/

No. C 09-00953 CW (PR)

ORDER OF DISMISSAL

INTRODUCTION

Plaintiff Eric L. Gonzalez, a state prisoner incarcerated at the Correctional Training Facility (CTF), has filed a <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983.  Thereafter, Plaintiff filed an amended complaint.  Plaintiff's motion for leave to proceed <u>in forma pauperis</u> has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred at CTF, which is located in this judicial district.  <u>See</u> 28 U.S.C. § 1391(b).

In his amended complaint, Plaintiff names the following CTF officials as Defendants: Warden Randy Grounds and Appeals Coordinator P. Mullen.  He also names California Department of Corrections and Rehabilitation Secretary Matthew Cate.  Plaintiff seeks injunctive relief.

DISCUSSION

I.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

United States District Court
For the Northern District of California

§ 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b) (1), (2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Moreover, pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

II.  Legal Claims

A.   Eighth Amendment Claims  (Claims One and Two)

Plaintiff claims that he is "being subjected to (1) cruel and unusual punishment, and (2) being denied equal treatment due to CDCR's failure to provide indigent inmates with shower shoes in order to protect their feet from other inmates['] body waste." (Am. Compl. at 3-3a.)[1]  Plaintiff also claims that on April 27, 2009, he "was stuck inside the cell with a toilet full of feces and urine as a result of the toilet shutting off" for one hour.  (Id. at 3c.)

_____

[1] Attached to Plaintiff's amended complaint are multiple handwritten pages; however, they are not numbered.  The Court will number the pages summarizing Plaintiff's version of the facts as pages 3a through 3r, and the pages listing the relief requested as pages 4a through 4c.

2

The Eighth Amendment requires that prison officials provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Supreme Court held that a prison official violates the Eighth Amendment only if two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official must possess a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  The more basic the need, the shorter the time it can be withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  See id. at 732-733.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries.  See, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); Evans v. Fogg, 466 F. Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for twenty-four hours in refuse-strewn

3

United States District Court
For the Northern District of California

1   cell and for two days in flooded cell).  Federal courts instead

2   should avoid enmeshing themselves in the minutiae of prison

3   operations in the name of the Eighth Amendment.  See Wright v.

4   Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981).

5       Here, Plaintiff alleges that because he was not given a free

6   pair of "shower shoes" during the time he was housed at CTF, he was

7   exposed to "body waste" each time he showered.  Plaintiff was never

8   deprived of "shower shoes" by CTF officials because he could have

9   purchased a pair from the canteen or borrowed a pair from another

10   inmate.  However, he did not do so.  Therefore, his claim fails to

11   amount to an Eighth Amendment violation.  Plaintiff also alleges

12   that for one hour on April 27, 2009, his toilet was full of feces

13   and urine.  The short period of time during which Plaintiff was

14   subjected to the conditions on April 27, 2009 is insufficient to

15   amount to an Eighth Amendment violation.  Accordingly, his Eighth

16   Amendment claims (Claims One and Two) are DISMISSED WITH PREJUDICE.

17       B.   First Amendment Claim -- R-rated Movies (Claim Three)

18       Plaintiff alleges that Defendants have instituted policies

19   providing that R-rated movies may not be viewed by prisoners at

20   CTF.  (Am. Compl. at 3d-3e.)  Plaintiff is referring to Section

21   3220.4 of Title 15 of the California Code of Regulation and Section

22   101040.4.6 of the Department of Corrections and Rehabilitation

23   Operations Manual (DOM), which prohibit showing R-rated movies to

24   inmates unless they are "specially edited down" (SED).[2]  The injury

25

26       [2] Section 101040.4.6 of the DOM provides, in relevant part,
"Only movies/videos with a Motion Picture Association of America

27   (MPAA) rating of General (G), Parental Guidance (PG) or Parental
Guidance (PG-13) may be considered for general viewing by the

28   inmate population.  Movies/videos with Specially Edited Down (SED)

**United States District Court**
For the Northern District of California

Plaintiff alleges is that these policies constitute a "ban on R-rated movies," and thus they violate his First Amendment rights.

Plaintiff has attached to his amended complaint his 602 inmate appeal relating to his First Amendment claim. (Attach. Am. Compl., A-20 - A-30.) On his appeal form, Plaintiff states: "On Jan. 19, 2009 thru Jan. 25, 2009, this facility aired on its video channel a movie called 'The Blue Max,' which contained a scene showing frontal nudity of a woman's breast." (Id., A-20.) Plaintiff also claims that other R-rated movies were shown at CTF, including "The House Bunny," "The Dark Knight," and "Babalon [sic] A.D." (Id., A-22 - A-24.) Plaintiff does not allege that Defendants only showed SED or R-edited versions of these R-rated movies. Under Federal Rule of Civil Procedure 10(c), an exhibit attached to the pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings. See, e.g., United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 750, 754 (5th Cir. 2004); Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002). Because the

---

rating may be viewed in accordance with the provisions in this section."

Section 3220.4(b) of Title 15 of the California Code of Regulations provides, in relevant part, "Only those movies/videos which have been given a rating of "G," "PG," or "PG-13" by the Motion Picture Association of America (MPAA) or that have been placed on the department's discretionary showing list may be considered for viewing. Movies/videos which have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America shall not be approved for general inmate viewing. Regardless of their rating or listing, movies/videos which, in the opinion of the reviewer, glorify violence or sex, or are inflammatory to the climate of the facility shall not be shown."

exhibits attached to Plaintiff's amended complaint contradict his claim that CTF officials did not allow inmates to watch any R-rated movies, his allegation of injury -- that Defendants banned R-rated movies -- is not sufficient.  Because the alleged policies apparently were not enforced at his facility, Plaintiff has not shown that these policies had any effect on him.  Accordingly, Plaintiff's First Amendment claim (Claim Three) is DISMISSED WITH PREJUDICE.

      C.    First Amendment and Due Process Claims - Basic Cable T.V.
          (Claim Four)

    Plaintiff claims that Defendants denied him "basic cable T.V." in violation of his First Amendment "right to freedom of information, speech and art" as well as his due process rights.

    First, Plaintiff claims that Defendants violated his First Amendment rights because they denied him access to certain television channels.  The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I. Prisoners retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system.  <u>See</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Although a prisoner does not lose all First Amendment protections when he enters prison, <u>id.</u>, the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125-26 (1977).  Accordingly, a prison regulation that impinges on a prisoner's First Amendment right to free speech is valid only "if

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

it is reasonably related to legitimate penological interests." Shaw v. Murphy, 532 U. S. 223, 229 (2001) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Here, Plaintiff does not assert a cognizable First Amendment claim.  While the free speech clause may be implicated when state officials take adverse action against an individual based on his spoken or written words, Plaintiff makes no such allegation in the present case.  His claim that Defendants denied him "basic cable T.V." does not amount to a violation of the free speech clause.  Accordingly, Plaintiff's First Amendment claim relating to the denial of "basic cable T.V." is DISMISSED WITH PREJUDICE.

Second, Plaintiff claims that Defendants were supposed to use the "Inmate Welfare Fund (IWF) to purchase 'basic' cable T.V." and that their "failure to use the IWF to purchase basic cable T.V. was a denial of due process."  (Am. Compl. at 3f-3g.)  He seems to assert that Defendants' actions were a form of punishment, and that this violated his liberty interest in not being so punished without being afforded due process protections.  Due process protections attach only to deprivations of interests in life, liberty or property by the state.  In this case, Plaintiff contends only that his liberty interest in not being punished is implicated.  For prisoners, a protected liberty interest exists only if the deprivation of it would be an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Plaintiff's allegations are insufficient to allege atypical and significant hardship as required by Sandin.  A denial of "basic cable T.V."

United States District Court
For the Northern District of California

does not, as a matter of law, constitute an atypical and
significant hardship. See Rahman X v. Morgan, 300 F.3d 970, 973-74
(8th Cir. 2002) (no due process claim for deprivation of
television, certain property, access to commissary and restrictions
on outdoor exercise for twenty-six months); Warren v. Irvin, 985 F.
Supp. 350, 353 (W.D.N.Y. 1997) (Denial of telephone, packages,
commissary, earphones, movies and television "does not represent
the type of deprivation which could reasonably be viewed as
imposing atypical and significant hardship on an inmate."). 
Accordingly, Plaintiff's due process claim relating to the denial
of "basic cable T.V." is DISMISSED WITH PREJUDICE.

D.   Gender Discrimination Claim (Claim Five)

Plaintiff alleges that Defendants discriminated against him
based on gender by "prohibiting male inmates the right to purchase
the same products as female inmates in the quarterly package
program and from wearing earrings . . . ."  (Am. Compl. at 3i.)

"The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall 'deny to any person within its
jurisdiction the equal protection of the laws,' which is
essentially a direction that all persons similarly situated should
be treated alike." City of Cleburne v. Cleburne Living Center, 473
U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216
(1982)).  A prisoner challenging his treatment as compared to that
of other prisoners must allege that his treatment is invidiously
dissimilar to that received by other inmates.  See More v. Farrier,
984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious
discrimination, federal courts should defer to judgment of prison

8

United States District Court
For the Northern District of California

officials); <u>Timm v. Gunter</u>, 917 F.2d 1093, 1099 (8th Cir. 1990). Proof of a discriminatory intent or purpose is also required. <u>City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.</u>, 538 U.S. 188, 194 (2003). In the prison context, an allegedly discriminatory prison regulation or practice is valid as long as it is "reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 89.

Plaintiff has attached to his amended complaint his 602 inmate appeal relating to his gender discrimination claim. According to the Director's level review response, ". . . male inmates are not allowed to receive or possess items of clothing designed and manufactured specifically for women unless authorized for medical reasons. The acquisition of earrings is specifically prohibited for male inmates by the CCR 3062(k)." (Attach. Am. Compl., A.50.) Section 3062(k) of Title 15 of the California Code of Regulation states:

> An inmate may not pierce any part of his/her body for the purpose of wearing an earring or other jewelry. A male inmate may not possess or wear earrings. A female inmate may wear authorized earrings with only one matching earring worn in each ear. An inmate shall not possess or wear any type of jewelry or other object intended to be worn as a body piercing adornment.

Cal. Code Regs. tit. 15, § 3062(k). Because Defendants were following prison regulations when they denied Plaintiff earrings and access to the same products as female inmates in the quarterly package program, Plaintiff has failed to show a discriminatory intent or purpose. He also fails to allege that the denial was not based on a legitimate penological interests. Accordingly,

Plaintiff fails to state a cognizable claim under the Equal
Protection Clause based on the alleged gender discrimination.

> E.   Equal Protection Claim - "Afro-American" television
>      programs and movies (Claims Six and Eight)

Plaintiff alleges that Defendants "were treating the Hispanic
inmates better than the Afro-American inmates by providing the
Hispanic inmates with two Spanish T.V. channels (Telemundo
Univision) that caters solely to the Hispanic culture, while not
providing any T.V. channels for the Afro-American inmates that
would cater to their culture."  (Am. Compl. at 3i-3j.)  He also
claims that Defendants failed to show "Afro-American movies."  (Id.
at 3n.)  Plaintiff, who is African-American, claims that this
failure violates his rights under the Equal Protection Clause.

To state a claim under § 1983 for violation of the Equal
Protection Clause, "a plaintiff must show that the defendants acted
with an intent or purpose to discriminate against the plaintiff
based upon membership in a protected class."  Thornton v. City of
St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal
quotation and citation omitted).

Here, Plaintiff fails to allege an equal protection claim
because his amended complaint makes clear that he was not treated
differently than other prisoners.  There is no allegation that
Plaintiff, or other African-American inmates, were prohibited from
accessing the same television programs that other inmates were
allowed to watch.  Plaintiff claims that Defendants "provided 'race
specific relief' for Hispanic inmates by 'purchasing' a Spanish
T.V. channel," but they discriminated against him based on his
ethnicity by denying him the same opportunities.  (Am. Compl. at

United States District Court
For the Northern District of California

3p.)  It is not clear what Plaintiff means by claiming that Defendants should "provide Afro-American inmates with 'race specific relief'" in the form of "Afro-American" T.V. channels and movies.  (Id.)  However, it is clear from the allegations in the amended complaint that such programming was not provided to anyone at CTF, not just Plaintiff or other African-American inmates. Because Plaintiff alleges that no inmates were allowed to watch such programs, there was no different treatment or discrimination against Plaintiff.  Accordingly, Plaintiff's allegations, even liberally construed, do not state a cognizable claim for the violation of his rights under the Equal Protection Clause.

F.   Freedom of Religion Claim (Claim Seven)

Plaintiff claims that on May 7, 2009, when he attempted to "receive his CD player, the R&R staff required that Plaintiff turn over his cassette/radio player."  (Am. Compl. at 3k-3l.)  He alleges CTF's policy "requiring him to relinquish his cassette/radio player violated his right to freedom of religion because the cassette/radio served as the only tool Plaintiff had in his possession to use to listen to his 'non-denominational' cassette tapes that were sent to him from his church."  (Id. at 3l.)

Plaintiff has attached to his amended complaint his 602 inmate appeal relating to his freedom of religion Claim.  (Attach. Am. Compl., A-58 - A-69.)  The institutional responses to his grievance indicate that "DOM 54030.17.91 clearly reveals that the appellant may possess one audio entertainment appliance."  (Id., A-68.)  The responses further point out that it was Plaintiff's choice whether to "relinquish his cassette player so he could receive a CD player

11

to listen to music." (<u>Id.</u>)  In order to establish a violation of

the First Amendment's free exercise right, a prisoner must show

that the defendants burdened the practice of his religion, by

preventing him from engaging in conduct mandated by his faith,

without any justification reasonably related to legitimate

penological interests.  <u>See</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736

(9th Cir. 1997).  Even if listening to his non-denominational

religious tapes was mandated by his faith, Plaintiff would not

prevail because Defendants' rule of only allowing one audio

appliance did not restrict his ability to practice his religion.

Instead, it was Plaintiff's decision not practice his religion by

listening to his religious tapes when he relinquished his tape

player for his CD player.  Accordingly, Plaintiff fails to state a

cognizable freedom of religion claim.

G.    Claim Relating to the Grievance Process (Claim Nine)

Finally, Plaintiff claims that on January 27, 2009, he "made

an attempt to file a 602 appeal contesting the adverse decision he

received from the Classification Services Unit." (Am. Compl. at

3p.)  However, he alleges that Defendants "refused to file

Plaintiff's 602 appeal by 'screening out' the 602 appeal." (<u>Id.</u> at

3q.)

Interests protected by the Due Process Clause may arise from

two sources -- the Due Process Clause itself and laws of the

states.  <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976).  There

is no constitutional right to a prison administrative appeal or

grievance system.  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir.

2003).  However, California Code of Regulations, title 15 section

3084, et seq. grants state prisoners the right to a prison appeals

United States District Court
For the Northern District of California

process.  The regulations are purely procedural -- they require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards.  Instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d).  A provision that merely sets procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest.  Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause).  Accordingly, a prison official's failure to process grievances, without more, is not actionable under § 1983.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Ramirez, 334 F.3d at 860 (prisoner's claimed loss of liberty interest in processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system).  Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action.  See Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance.").

    Accordingly, Plaintiff's claim that his constitutional rights were violated by the failings of the prison administrative grievance system is DISMISSED WITH PREJUDICE.

United States District Court
For the Northern District of California

CONCLUSION

For the foregoing reasons, the amended complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.  The Clerk of Court shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 5/14/2010

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

        Plaintiff,

  v.

P. MULLEN et al,

        Defendant.
_____/

Case Number: CV09-00953 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 14, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric L. Gonzalez E66196
State Prison Correctional Training Facility
P.O. Box 689
Fox Wing 235 Low
Soledad,  CA 93960-0689

Dated: May 14, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

15