IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

       Plaintiff,

  v.

P. MULLEN, et al.,

       Defendants.

_____/

No. C 09-00953 CW (PR)

ORDER DENYING MOTION FOR RECONSIDERATION

Plaintiff Eric L. Gonzalez, a state prisoner, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging constitutional violations at the Correctional Training Facility (CTF).  Thereafter, he filed an amended complaint.  On May 14, 2010, his amended complaint was dismissed with prejudice for failure to state a claim upon which relief could be granted. Judgment was issued on the same date.

On June 7, 2010, Plaintiff filed a motion for relief from judgment, which the Court construes as a motion for reconsideration under Federal Rule of Civil Procedure 60(b).  Plaintiff has also appealed the Court's May 14, 2010 Order and Judgment to the Ninth Circuit Court of Appeals, which has held the appeal "in abeyance pending the district court's resolution of the pending June 7, 2010 motion."  (June 17, 2010 Ninth Circuit Order at 1.)

Plaintiff states that: "(1) the Court's findings was error, (2) the Court misunderstood the claims in the First Amended Complaint, and (3) judicial equity would be served by allowing the First Amended Complaint to pass through the screening stage." (Mot. at 1-2.)

**United States District Court**
For the Northern District of California

Where the district court's ruling has resulted in a final judgment or order, a motion for reconsideration may be based on Rule 60(b) of the Federal Rules of Civil Procedure. <u>See</u> <u>Am. Ironworks & Erectors v. N. Am. Constr. Corp.</u>, 248 F.3d 892, 898-99 (9th Cir. 2001). Rule 60(b) lists six grounds for relief from a judgment. Such a motion must be made within a "reasonable time," and, as to grounds for relief (1), (2) and (3), no later than one year after the judgment was entered. <u>See</u> Fed. R. Civ. P. 60(b).

Rule 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); <u>School Dist. 1J v. ACandS Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993). Rule 60(b) provides a mechanism for parties to seek relief from a judgment when "it is no longer equitable that the judgment should have prospective application," or when there is any other reason justifying relief from judgment. <u>Jeff D. v. Kempthorne</u>, 365 F.3d 844, 853-54 (9th Cir. 2004) (quoting Fed. R. Civ. P. 60(b)). "Although the application of Rule 60(b) is committed to the discretion of the district courts . . . , as a general matter, Rule 60(b) is remedial in nature and must be liberally applied." <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 695-96 (9th Cir. 2001) (internal quotation marks and ellipsis omitted).

In the present motion, Plaintiff argues the Court erred in

1  dismissing eight of his claims,[1] as follows:

2  I.   Eighth Amendment Claims  (Claims One and Two)

3       The following factual background relating to Plaintiff's

4  Eighth Amendment claims is taken from the Court's May 14, 2010

5  Order:

6           Plaintiff claims that he is "being subjected to
         (1) cruel and unusual punishment, and (2) being denied
7        equal treatment due to CDCR's failure to provide
         indigent inmates with shower shoes in order to protect
8        their feet from other inmates['] body waste."  (Am.
         Compl. at 3-3a.)  Plaintiff also claims that on April
9        27, 2009, he "was stuck inside the cell with a toilet
         full of feces and urine as a result of the toilet
10       shutting off" for one hour.  (Id. at 3c.)

11  (May 14, 2010 Order at 2.)

12       The Court found that "Plaintiff was never deprived of 'shower

13  shoes' by CTF officials because he could have purchased a pair from

14  the canteen or borrowed a pair from another inmate."  (Id. at 3.)

15  Because he did not do so, his claim failed to amount to an Eighth

16  Amendment violation.  The Court also found that the short period of

17  time during which Plaintiff was subjected to unpleasant conditions

18  on April 27, 2009 was insufficient to amount to an Eighth Amendment

19  violation.

20       In his motion for reconsideration, Plaintiff claims that he

21  could not have purchased showed shoes from the canteen because he

22  is indigent.  He also claims that borrowing shower shoes is a

23  "security risk because other inmates will begin to think the

24  borrower owes them favors." (Mot. at 2.)  Finally, he claims that

25  Defendants "intentionally" calibrated the inmate toilets to shut

26  off for an hour when full; therefore, they are liable for an Eighth

27  _____

28       [1] Plaintiff did not seek reconsideration of his freedom of
    religion claim (Claim Seven).

3

**United States District Court**
For the Northern District of California

Amendment violation.

Plaintiff does not provide additional facts to support his claim of an Eighth Amendment violation.  Even assuming that (1) Plaintiff could not afford to buy and refused to borrow shower shoes from other inmates; or (2) Defendants' intentional actions led to Plaintiff being subjected to the conditions on April 27, 2009, the allegations in his claims and in his motion fail to amount to an Eighth Amendment violation.

Accordingly, his motion is DENIED as to his Eighth Amendment claims (Claims One and Two).

II.  First Amendment Claim -- R-rated Movies (Claim Three)

The following factual background relating to Claim Three is taken from the Court's May 14, 2010 Order:

> Plaintiff alleges that Defendants have instituted policies providing that R-rated movies may not be viewed by prisoners at CTF.  (Am. Compl. at 3d-3e.) Plaintiff is referring to Section 3220.4 of Title 15 of the California Code of Regulation and Section 101040.4.6 of the Department of Corrections and Rehabilitation Operations Manual (DOM), which prohibit showing R-rated movies to inmates unless they are "specially edited down" (SED).  The injury Plaintiff alleges is that these policies constitute a "ban on R-rated movies," and thus they violate his First Amendment rights.

(May 14, 2010 Order at 4-5.)

The Court found that the exhibits attached to Plaintiff's amended complaint showing that certain movies with nudity were shown at CTF contradicted his claim that CTF officials did not allow inmates to watch any R-rated movies.  Therefore, the Court dismissed Plaintiff's First Amendment claim.  Because the alleged policies apparently were not enforced at his facility, Plaintiff had not shown that these policies had any effect on him.

4

United States District Court
For the Northern District of California

1    In his motion, Plaintiff clarifies that the movies that were

2   shown at CTF, including "The Blue Max," "The House Bunny," "The

3   Dark Knight," and "Babalon [sic] A.D.," were all rated PG-13.

4   Therefore, Plaintiff argues that his allegations "state a 1st

5   Amendment violation warranting further review pass [sic] the

6   screening stage."  (Mot. at 9.)

7    Even if the Court were to accept Plaintiff's allegation that

8   all the movies named above were rated PG-13, his claim that

9   Defendants denied him R-rated movies would not amount to a

10   violation of his rights under the First Amendment.  In its May 14,

11   2010 Order, the Court summarized the law relating to when a prison

12   regulation violates a prisoner's First Amendment right to free

13   speech:

14        The First Amendment prohibits government officials
        from "abridging the freedom of speech . . . or the
15        right of the people peaceably to assemble."  U.S.
        Const. amend. I.  Prisoners retain those First
16        Amendment rights not inconsistent with their status as
        prisoners or with legitimate penological objectives of
17        the corrections system.  See Pell v. Procunier, 417
        U.S. 817, 822 (1974).  Although a prisoner does not
18        lose all First Amendment protections when he enters
        prison, id., the "inmate's 'status as a prisoner' and
19        the operational realities of a prison dictate
        restrictions on the associational rights among
20        inmates."  Jones v. North Carolina Prisoners' Labor
        Union, Inc., 433 U.S. 119, 125-26 (1977).  Accordingly,
21        a prison regulation that impinges on a prisoner's First
        Amendment right to free speech is valid only "if it is
22        reasonably related to legitimate penological
        interests."  Shaw v. Murphy, 532 U. S. 223, 229 (2001)
23        (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

24   (May 14, 2010 Order at 6-7.)

25    Here, the allegations in Plaintiff's complaint and in his

26   motion fail to assert a cognizable First Amendment claim because

27   the regulations he challenges are reasonably related to legitimate

28   penological interests.

United States District Court
For the Northern District of California

Section 101040.4.6 of the Department of Corrections and Rehabilitation Operations Manual provides, in relevant part, "Only movies/videos with a Motion Picture Association of America (MPAA) rating of General (G), Parental Guidance (PG) or Parental Guidance-13 (PG-13) may be considered for general viewing by the inmate population.  Movies/videos with Specially Edited Down (SED) rating may be viewed in accordance with the provisions in this section." Section 3220.4(b) of Title 15 of the California Code of Regulations provides, in relevant part, "Only those movies/videos which have been given a rating of 'G,' 'PG,' or 'PG-13' by the Motion Picture Association of America (MPAA) or that have been placed on the department's discretionary showing list may be considered for viewing.  Movies/videos which have been given a rating of other than 'G,' 'PG,' or 'PG-13' by the Motion Picture Association of America shall not be approved for general inmate viewing. Regardless of their rating or listing, movies/videos which, in the opinion of the reviewer, glorify violence or sex, or are inflammatory to the climate of the facility shall not be shown."

The Court finds that the regulations in place for the denial of R-rated movies are reasonably related to legitimate penological interests.  Denying prisoners access to movies which "glorify violence" enhances the safety of prison officials and prisoners, while at the same time not impinging on Plaintiff's right to freedom speech.  See Turner, 482 U.S. at 89.  Regardless of the fact that prison officials denied Plaintiff R-rated movies, he was given the opportunity to watch SED versions of the R-rated movies. Therefore, Plaintiff's claim that Defendants denied him R-rated movies does not amount to a violation of the free speech clause.

Accordingly, his motion is DENIED as to his First Amendment claim relating to the unavailability of R-rated movies (Claim Three).

III. First Amendment and Due Process Claims - Basic Cable T.V. (Claim Four)

Plaintiff alleged that Defendants "denied him 'basic cable T.V.' in violation of his First Amendment 'right to freedom of information, speech and art' as well as his due process rights." (May 14, 2010 Order at 6.)  In its May 14, 2010 Order, the Court found that Plaintiff's allegations failed to amount to either a First Amendment or a due process violation.

In his motion, Plaintiff does not contest the Court's findings as to Defendants' failure to provide "basic cable T.V." (Mot. at 9.)  Instead, Plaintiff claims the Court failed to address "the 'local T.V. policy' issue" raised in one of the attachments to the pleadings.  (Id.)  Plaintiff alleges that "the prison's 'local T.V. policy' prohibits inmates from viewing nonlocal T.V. channels that had better programming, which violated the right to freedom, and expression protected by the 1st Amendment."  (Id. at 10.)

Even if the Court were to construe Plaintiff's Claim Four to include "the 'local T.V. policy' issue," such an allegation would fail to amount to a First Amendment violation.  Plaintiff fails to allege in his complaint or in his motion that there was no legitimate penological objective for this denial.  Therefore, his claim that Defendants denied him "nonlocal T.V. channels" does not amount to a violation of the free speech clause.

Accordingly, Plaintiff's motion is DENIED as to his First Amendment claim relating to the denial of "nonlocal T.V. channels" (Claim Four).

IV.   Gender Discrimination Claim (Claim Five)

Plaintiff states that "Defendants discriminated against him based on gender by 'prohibiting male inmates the right to purchase the same products as female inmates in the quarterly package program and from wearing earrings . . . .'"  (May 14, 2010 Order at 8.)  The Court found that Plaintiff failed to state a cognizable claim under the Equal Protection Clause based on the alleged gender discrimination because: (1) Plaintiff did not show a discriminatory intent or purpose as Defendants were following prison regulations when they denied Plaintiff earrings and access to the same products as female inmates; and (2) he also failed to allege that the denial was not based on a legitimate penological interests.  (Id. at 9.)

In his motion, Plaintiff claims the prison regulation banning earrings, Section 3062(k) of Title 15 of the California Code of Regulations, is "discriminatory."  (Mot. at 14.)  He also alleges that the Court "misunderstood Claim Five," because he named all the different products that "female inmates are getting in the quarterly package that male inmates were not receiving," including "(1) Levi jeans, (2) immersion heaters, (3) alarm clocks, (4) drink mix with sugar, (5) honey, (6) jam, (7) jelly, and (8) raisins." (Id. at 11-12.)  Thus, he argues that "not allowing male inmates to purchase the above products served no legitimate penological interests."  (Id. at 12.)

Plaintiff's claim of an equal protection violation is without merit.  In the prison context, Turner only requires that the regulation or practice is "reasonably related to legitimate penological interests."  Turner, 482 U.S. at 89.  There is a rational basis for treating male and female inmates differently,

8

and the prison officials' determination that male inmates pose a

greater threat of violence and physical injury to other male

inmates than do female inmates to other female inmates warrants

deference.  See Beard v. Banks, 548 U.S. 521, 526 (2006).

Accordingly, Plaintiff has failed to show a discriminatory intent

or purpose, and his motion is DENIED as to his equal protection

claim based on the alleged gender discrimination (Claim Five).

V.   Equal Protection Claim - "Afro-American" television programs
     and movies (Claims Six and Eight)

     The following factual background is taken from the Court's May

14, 2010 Order:

          Plaintiff alleges that Defendants "were treating
     the Hispanic inmates better than the Afro-American
     inmates by providing the Hispanic inmates with two
     Spanish T.V. channels (Telemundo Univision) that caters
     solely to the Hispanic culture, while not providing any
     T.V. channels for the Afro-American inmates that would
     cater to their culture."  (Am. Compl. at 3i-3j.)  He
     also claims that Defendants failed to show "Afro-
     American movies."  (Id. at 3n.)  Plaintiff, who is
     African-American, claims that this failure violates his
     rights under the Equal Protection Clause.

(May 14, 2010 Order at 10.)  The Court found that, because

Plaintiff alleged that no inmates were allowed to watch such

programs, "there was no different treatment or discrimination

against Plaintiff."  (Id. at 11.)  The Court concluded that his

allegations failed to amount to an equal protection violation.

(Id.)

     In his motion, Plaintiff claims that the Court "misunderstood

Claim Six."  (Mot. at 15.)  However, Plaintiff repeats the same

allegations as those in his amended complaint.  He claims that the

Spanish T.V. channels were purchased with money from the Inmate

Welfare Fund (IWF), which "black inmates contribute to as well as

9

the hispanic inmates." (<u>Id.</u> at 16.)  He argues that "[n]ot allowing the black inmates to use the IWF funds to purchase the Black Entertainment T.V. channel (B.E.T.) -- when hispanic inmates were allowed to purchase an all spanish speaking T.V. channel with the IWF funds -- is unequal treatment between two ethnic groups that are similarly situated." (<u>Id.</u>)

Plaintiff's allegations in his motion fail to state a cognizable equal protection claim because he was not treated differently than other prisoners.  Even if the Hispanic inmates benefitted from the Spanish T.V. channels purchased with money from IWF, it is clear that no inmates were provided with "Afro-American" television programs.  Therefore, such programming was unavailable to everyone at CTF, and not just to Plaintiff or to other African-American inmates.  There was no different treatment or discrimination against Plaintiff.  Accordingly, the Court DENIES Plaintiff's motion relating to his rights under the Equal Protection Clause (Claims Six and Eight).

VI.  Claim Related to the Grievance Process (Claim Nine)

The following factual background about Plaintiff's due process claim related to the grievance process is taken from the Court's May 14, 2010 Order:

> Finally, Plaintiff claims that on January 27, 2009, he "made an attempt to file a 602 appeal contesting the adverse decision he received from the Classification Services Unit." (Am. Compl. at 3p.) However, he alleges that Defendants "refused to file Plaintiff's 602 appeal by 'screening out' the 602 appeal." (<u>Id.</u> at 3q.)

(May 14, 2010 Order at 12.)

The Court dismissed Plaintiff's claim that his constitutional rights were violated by the failings of the prison administrative

United States District Court
For the Northern District of California

grievance system stating: "Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action." (Id. at 13 (citing Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance.")).)

In his motion, Plaintiff claims that prison officials "may not impede or interfere with the inmate from having access to the very system that it has itself established without violating due process of law." (Mot. at 17.) He claims that "prison official's impeding Plaintiff's attempts to file his 602 appeal contesting the adverse decision by the Classification Services Unit violated due process." (Id. at 18.)

Plaintiff's allegations in his motion do not include his original claim that prison officials "screen[ed] out" his 602 appeal. Such a claim was the basis of the Court's decision that his due process claim was not cognizable. Even if the Court considers the allegation in his motion that prison officials failed to file his grievance, a prison official's failure to process grievances, without more, is not actionable under § 1983. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Accordingly, the Court DENIES Plaintiff's motion relating to his claim that his constitutional rights were violated by the failings of the prison administrative grievance system (Claim Nine).

CONCLUSION

For the reasons discussed above, Plaintiff's motion for reconsideration (docket no. 11) is DENIED.

United States District Court
For the Northern District of California

1      With the denial of the motion for reconsideration the notice

2 of appeal becomes effective.  _See_ Fed. R. App. P. 4(B)(i).

3      Rule 24(a)(3) of the Federal Rules of Appellate Procedure

4 provides that a party granted leave to proceed _in forma pauperis_

5 (IFP) in district court, as Plaintiff was here, may continue in

6 that status on appeal unless the district court certifies that the

7 appeal is not taken in good faith, which in this context means that

8 it is frivolous.  _See_ _Ellis v. United States_, 356 U.S. 674, 674-75

9 (1958).  The appeal is taken in good faith; therefore, Plaintiff

10 may continue his IFP status on appeal.

11      The Clerk of the Court shall notify Plaintiff and the Ninth

12 Circuit of this Order.  _See_ Fed. R. App. P. 24(a)(4).

13      Pursuant to the Ninth Circuit's June 17, 2010 Order, Plaintiff

14 "shall file an amended notice of appeal" within _thirty (30) days_ of

15 the date of this Order.  (June 17, 2010 Ninth Circuit Order at 1-

16 2.)

17      This Order terminates Docket no. 11.

18      IT IS SO ORDERED.

19 Dated: 9/1/2010

20 CLAUDIA WILKEN
   UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

G:\PRO-SE\CW\CR.09\Gonzalez0953.denyRECON.wpd   12

United States District Court
For the Northern District of California

1

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

2

3

4  ERIC L. GONZALEZ,                           Case Number: CV09-00953 CW

5              Plaintiff,                       **CERTIFICATE OF SERVICE**

6     v.

7  P. MULLEN et al,

8              Defendant.
   _____/

9

10  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.

11  That on September 1, 2010, I SERVED a true and correct copy(ies) of the attached, by placing
    said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
12  depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
    delivery receptacle located in the Clerk's office.

13

14

15  Eric L. Gonzalez E66196
    State Prison Correctional Training Facility
16  P.O. Box 689
    Fox Wing 235 Low
17  Soledad, CA 93960-0689

18  Dated: September 1, 2010
                                          Richard W. Wieking, Clerk
19                                        By: Nikki Riley, Deputy Clerk

20

21

22

23

24

25

26

27

28

G:\PRO-SE\CW\CR.09\Gonzalez0953.denyRECON.wpd     13